IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

     v.

LOUIS MISTER,

        Defendant.

Criminal No. 07-1014 (JBS)

OPINION

**APPEARANCES:**

Jenny R. Kramer, Assistant United States Attorney
Hallie Mitchell, Assistant United States Attorney
OFFICE OF THE US ATTORNEY
970 Broad Street
Suite 700
Newark, NJ 07102
    Attorneys for the United States of America

Lisa J. Van Hoeck, Assistant Federal Public Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
22 South Clinton Avenue
Station Plaza No. 4
4th Floor
Trenton, NJ 08609
    Attorney for Defendant

**Simandle, District Judge:**

**I.    INTRODUCTION**

    This matter is before the Court on the Motion in Limine of the United States to exclude proffered expert testimony about Defendant's mental condition on the basis that it runs afoul of the Insanity Defense Reform Act, 18 U.S.C. § 17(a), by providing excuses for the charged conduct that do not negate mens rea.  For the reasons explained below, the Court shall grant the motion in limine in part and deny it in part.  Testimony about Defendant's

low intellectual functioning and intelligence are not barred under Insanity Defense Reform Act, as such evidence, under the circumstances of this case, is relevant to whether Defendant knew the money he accepted was a bribe or corrupt payment, an element of each of the charges in Counts One, Two and Three of the Superseding Indictment.  However, evidence of Defendant's "suggestibility" is barred because that is a personality trait not relevant to whether Defendant had the requisite knowledge of the nature of the payments he allegedly facilitated.

**II.   BACKGROUND**

Defendant Louis Mister is charged in a four-count superseding indictment with (1) conspiracy in violation of 18 U.S.C. § 1951(a) (the Hobbs Act), for agreeing to accept money on behalf of Maurice Callaway in exchange for Callaway's official action in obtaining Pleasantville Board of Education ("PBOE") contracts[1]; (2) extortion in violation of 18 U.S.C. § 1951(a) and Section 2, by obtaining money for Callaway in exchange for Callaway's official action[2]; (3) acceptance of corrupt payments

---

[1]  "For conspiracy convictions, this Court requires (1) some evidence of an agreement among the conspirators and (2) knowledge on behalf of each of the conspirators that the agreement 'had the specific unlawful purpose charged in the indictment.'"  United States v. Inigo, 925 F.2d 641, 652 (3d Cir. 1991) (quoting United States v. Terselich, 885 F.2d 1094, 1097 (3d Cir. 1989)).

[2]  To show extortion under the Hobbs Act, the Government must prove the Defendant acted "knowing that the payment was made in return for official acts."  Evans v. United States, 504 U.S. 255, 268 (1992).

with intent to influence and reward a PBOE official, in violation of 18 U.S.C. § 666(a)(1)(B)[3] and Section 2, by aiding and abetting and accepting cash payments for Callaway with the intent for Callaway to be influenced and rewarded on transactions with a value in excess of $5,000; and (4) attempted interference with commerce by extortion under color of official right in violation of 18 U.S.C. § 1951(a) and Section 2, by working to appoint James McCormick to the Pleasantville Board Of Education (PBOE) and obtaining money for McCormick in exchange for McCormick's official action on the PBOE.  For Counts One, Two, and Three, the Government has the burden at trial of proving beyond a reasonable doubt that Defendant knew the payments he was accepting for Callaway were corrupt payments or bribes.

On September 6, 2007, following a widespread political corruption investigation, the Government arrested twelve individuals, including Defendant.  The Government accused Mr. Mister of, among other things, accepting a corrupt payment on behalf of his friend Maurice Callaway, a member of the PBOE.[4]  On

---

[3]  "If the charge is brought on a bribery theory, then the government must prove the intent to reward an official for future conduct; if the charge is brought on a gratuity theory, the intent must be to reward the official for past conduct." United States v. Crozier, 987 F.2d 893, 899 (2d Cir. 1993).

[4]  The following description of events comes from Defendant's brief on this motion.  Of course no evidence has been accepted in this case as trial has not yet begun, so no party should construe this Court's rendition of events as an attempt to find facts.

June 5, 2006, Defendant accompanied Callaway to two meetings with cooperating witness Bruce Begg.  Defendant accepted $3,000 from Begg and then gave the money to Callaway, who in turn used the money to pay campaign workers.  Mr. Callaway was running for a council seat in Pleasantville, and the meetings with Begg occurred the day before the primary election.  The theory of the defense at trial will be that Defendant believed the payments he accepted were legitimate campaign contributions, not given in exchange for official action.  It appears that there will be no evidence Callaway or Begg ever explicitly told him otherwise. The Government alleges that the money was actually a bribe, paid to Mr. Callaway in exchange for his official action and influence in awarding PBOE contracts.  Thus, Mr. Mister denies knowledge of the corrupt character of the payments, which knowledge is an essential element of Counts 1, 2, and 3.

On or about February 6, 2008, Defendant filed notice, pursuant to Federal Rule of Criminal Procedure 12.2(b), of his intention to introduce expert testimony [Docket Item 22]. Defendant served the report of its proposed expert, Dr. Bruce Frumkin, on the Government.   The United States seeks a pretrial order precluding Dr. Frumkin's proposed testimony on the grounds that such opinion testimony about the defendant's mental condition is not permitted by the Insanity Defense Reform Act.

The Frumkin Report ("Frumkin Rep.") was composed on March

4

24, 2008[5] and was the result of a January 27, 2008 evaluation of Defendant (for more than seven hours), as well as the review of additional information.[6]  In an attempt to assess Defendant's psychological functioning at the time of the alleged offenses, Dr. Frumkin reviewed the results of several psychological and psycho-educational assessments:[7]

- Clinical Interview
- Wechsler Adult Intelligence Scale-III (WAIS III)
- Word Reading subtest of the Wide Range Achievement Test-4 (WRAT-4)
- MiniMental Status Examination (MMSE)
- Rey 15 Item Test (Rey)
- Word Recognition Test (WRT)
- Minnesota Multiphasic Personality Inventory-2 (MMPI-2)
- 16 Personality Factor (16PF)
- Validity Indicator Profile-Nonverbal (VIP)
- Gudjonsson Suggestibility Scales 1 (GSS 1)

On the WAIS-III, Defendant obtained an IQ score that put him in the "Borderline to Low Average range of intelligence for his age group." (Frumkin Rep. at 4.)  Dr. Frumkin noted that Defendant missed easy questions but was able to answer more

_____

[5]  The report erroneously states that it was composed on March 24, 2007.

[6]  In preparing the report, Dr. Frumkin met with defendant for approximately seven hours and also reviewed relevant filings in this case, a copy of a check from Bruce Begg made out to Defendant, recordings, newspaper clippings, and notes and test data and scores from Dr. Wilfred Van Gorp's evaluation of Defendant.  (Frumkin Rep. at 1.)

[7]  It appears that Dr. Frumkin did not administer these tests, but that Dr. Wilfred Van Gorp administered them during a March 10, 2008 evaluation of Defendant.

difficult ones and had a difficult time sustaining his attention.
Dr. Frumkin also reported that there was a 22-point difference
between Defendant's Verbal Comprehension Index of 91 (lower 27%)
and his Perceptual Organization Index (lower 2%), a rare
discrepancy.  (Id. at 5.)  According to Dr. Frumkin, Defendant's
processing speed was average and the size of the discrepancy
between processing speed and perceptual organization occurs in
less than 1% of the population.  (Id.)

Dr. Frumkin concluded that Defendant's MMSE results indicate
"some impairment in short-term memory."  (Id.)  Defendant's word
reading level as measured by the WRAT-4 was at the 9th grade
level.  The REY, WRT, and VIP were administered to detect
feigning and Frumkin reported that the results indicate Defendant
was not feigning.  (Id.)

Dr. Frumkin opined that:

> Mr. Mister is a relatively humble,
> unassertive, yet impulsive individual who
> does not take charge of situations.  Rather,
> he lets things happen to him.  Others are
> likely to see him as a friendly but
> submissive individual.  He is not comfortable
> in situations which require a lot of drive.

(Id.)

Dr. Frumkin also discussed clinical results of the GSS1, "a
test designed to help assess interrogative suggestibility . . .
."  (Id. at 6.)  Dr. Frumkin found that Defendant "yielded to
leading or misleading questions much more than the average person

. . . and shifted from one response, right or wrong[,] to a different response, to an extreme degree." (Id.) Dr. Frumkin noted that Defendant's total suggestibility was "at approximately the 98% range" and that Defendant was "much more likely, under pressure, to be misled and to give a different response, when pressured, compared to the average person." (Id.)

## III. DISCUSSION

Under the Insanity Defense Reform Act, 18 U.S.C. § 7, expert psychological testimony is not admissible to assert a diminished capacity defense, but only to show insanity as defined by the Act or to negate an element of the crime charged, United States v. Pohlot, 827 F.2d 889 (3d Cir. 1987), cert. denied, 484 U.S. 1011 (1988). Here, Defendant attempts to provide evidence of his mental condition, impaired intellectual functioning and suggestibility, to negate an element of the crimes charged by showing that he did not know the money he received was a bribe. Defendant claims such evidence is especially relevant in a case, such as this one, where the Government has requested a willful blindness jury instruction, and the anticipated Government evidence will attempt to show circumstantially that Defendant knew, even though he wasn't told, that the payments he received were corrupt payments.[8]

_____

[8]  Defendant does not, at this time, object to the willful blindness instruction. Instead, Defendant points out that if the jury will be asked to infer knowledge from circumstantial

In <u>Pohlot</u>, the Third Circuit explained that 18 U.S.C. § 17 does not bar defendants from presenting psychiatric evidence that disproves any element of the charged crime, including mens rea.

> We first consider the government's claim that evidence of mental abnormality is never admissible to negate mens rea. We disagree. Both the wording of the statute and the legislative history leave no doubt that Congress intended, as the Senate Report stated, to bar only alternative "affirmative defenses" that "excuse" misconduct not evidence that disproves an element of the crime itself.

<u>Pohlot</u>, 827 F.2d at 897.  The Court held that

> [b]ecause admitting psychiatric evidence to negate mens does not constitute a defense but only negates an element of the offense, § 17(a) by its terms does not bar it. Section 17(a) states only that "mental disease . . . does not otherwise constitute a defense;" it does not purport to establish a rule of evidence.

<u>Id.</u>  The <u>Pohlot</u> Court further explained that the Congressional intent was to "abolish only diminished responsibility and capacity defenses[,] not to abolish the use of psychiatric evidence to disprove mens rea."  <u>Id.</u> at 899.

Nevertheless, the <u>Pohlot</u> court cautioned district courts to look carefully at the proffered evidence, <u>id.</u> at 905-06, and the issues to which it is relevant to ensure that diminished capacity defenses are not disguised as other types of evidence and that

_____

evidence, the jury should also know that Defendant is impaired in his abilities to understand such circumstances.

the jury is not exposed to "needlessly confusing" expert testimony, see id. at 93.  The court said, "District courts should admit evidence of mental abnormality on the issue of mens rea only when, if believed, it would support a legally acceptable theory of lack of mens rea."  Id. at 906.  The same rule applies to expert and lay witness testimony about "mental abnormality"; it is admissible to so far as it is relevant to the required mens rea, but not otherwise.  Id. at 905.

## A.   The Proffer

Defendant seeks to admit expert testimony at trial that testing shows he functions at the borderline to low average range of intelligence; that he misperceives and misprocesses information and has difficulty problem solving; and that he is more suggestible than 98% of the population and is thus much more likely than the average person to be misled and to change his responses under pressure.[9]

Defendant seeks to admit this psychological evidence in support of his theory of the case, which is that he did not know the money he received from Bruce Begg on June 5, 2006 was a bribe or corrupt payment in exchange for Callaway's official action.

---

[9]  As explained below, the first two types of evidence shall not be barred at this time, but the third shall be. Specifically, evidence from the WAIS-III, which purportedly shows Defendant's intelligence, perception, processing and problem-solving impairments, is not barred.  Evidence from the GSS1 purportedly shows his unusual suggestibility.  That evidence is barred.

Defense counsel proffered that she believes the evidence will not show anyone ever explicitly told Defendant the money was a bribe or corrupt payment and that although the circumstances of receiving the money might permit an inference that a reasonable person would know the payment was a bribe or corrupt payment, Defendant did not have that knowledge.  Defense counsel argues that evidence of Defendant's low intellectual functioning and perceptual impairments would be helpful in explaining to the jury why Defendant failed to understand the nature of the payments he accepted on Callaway's behalf, and thus negate the element of specific intent.[10]

### B.   Analysis of Government's Objections

The Government argues that the evidence is barred because (1) Defendant's expert will not testify that Defendant lacked the ability to act purposefully at the time of the offense; (2) Defendant's expert has not diagnosed Defendant with any disorder or otherwise found his intelligence to be so low as to render him mentally retarded; and (3) Defendant's expert cannot opine

---

[10]   Defense counsel also proffered that the expert can testify about whether the impairments existed at the time of the alleged offenses, less than two years before Dr. Frumkin's examination and report.  As the Defendant is a mature man with no intervening trauma or illness that would otherwise explain a deterioration in mental condition, the Court accepts that proffer despite the lack of discussion of it in the Frumkin Report. However, this Opinion depends on the Court's understanding that Frumkin will testify at trial as to the Defendant's mental condition on June 5, 2006.

10

whether Defendant actually knew that the money he accepted was a bribe.

### 1.   Evidence of Intellectual Impairment Not Barred

#### a.   *Evidence Does not Have to Show Lack of Ability to Act Purposefully*

The Government argued strenuously that under <u>Pohlot</u> expert evidence of mental condition, including intellectual functioning, is not admissible unless the evidence tends to show that the Defendant is incapable of acting purposefully.  (See Gov't Br. at 7.)  In support of its argument, the Government relies on the facts and specific language of <u>Pohlot</u> itself and does not properly apply the law of <u>Pohlot</u> to the legal issues in this case.

In <u>Pohlot</u>, the defendant was permitted to offer psychiatric testimony at trial in support of an insanity defense but not in support of any other theory.  Accordingly, under the Insanity Defense Reform Act, the trial court instructed that Mr. Pohlot could be found not guilty by reason of insanity only if he proved that he was "unable to appreciate the nature and quality or the wrongfulness of his acts" at the time of the offense "as a result of a severe mental disease or defect."  <u>See</u> 18 U.S.C. § 17.  The trial court further instructed that psychiatric testimony was not relevant to other issues in the case.

Mr. Pohlot was charged with hiring a hit-man to kill his wife.  He presented expert testimony that tended to show he

11

suffered from depression and other psychological pathologies that caused him to attempt to take control of his life, and unconsciously to redeem his marriage, by plotting to kill his abusive wife.

On appeal, the Third Circuit upheld the conviction and held that while psychiatric testimony can be admitted if it is relevant to the issue of mens rea, Pohlot's evidence was not admissible on that issue because it did not tend to negate his intent to kill his wife, but only to explain the motivations for such intent.  The analysis of that issue is worth reviewing in context, because it shows that the <u>Pohlot</u> Court was focused on the specific mens rea element in that case: intent to kill.

> Rather than focusing on Pohlot's conscious mind, however, the [psychiatric] testimony focused on what Pohlot "really" knew.  Pohlot acknowledged that he was attempting "to fight back." Dr. Glass agreed that Pohlot transacted a cash transaction "for the purpose of killing his wife." Similarly, Dr. Glass testified that Pohlot knew in some sense what he was doing, "but he didn't know." Thus, according even to the defense, whatever Pohlot "really" knew and intended, at least a substantial part of his mind knew and intended exactly what were the natural consequences of his plotting.
>
> Placed in the context of the remaining evidence, it is clear that Pohlot acted with considerable awareness of what he was doing and with considerable purpose. Pohlot engaged in careful activity, over a lengthy period of time, sending first a deputy and then engaging in several phone calls and personal meetings all directed at one purpose: hiring someone to murder his wife. Pohlot came to a firm agreement, made payment, and expressed concern

12

and took action to assure that the crime was not ultimately traced to him.

In the context of the facts, both Pohlot's own testimony and that of Dr. Glass relate clearly not to Pohlot's intent in a legal sense but to Pohlot's meaningful understanding of his actions and their consequences. We often act intending to accomplish the immediate goal of our activity, while not fully appreciating the consequences of our acts. But purposeful activity is all the law requires. When one spouse intentionally kills the other in the heat of a dispute, he or she will rarely at that moment fully appreciate the consequences of the murder. The spouse is guilty of homicide nonetheless.

Taken in context, suggestions that Pohlot did not intend Selkow to commit murder focuses not on Pohlot's conscious mind but on his unconscious. To accept this theory as a defense to mens rea requires manipulation of the concept of intent beyond what the "intent" element of 18 U.S.C. § 1951(a) requires. Pohlot therefore offered his evidence of mental abnormality in support of a legally unacceptable theory of lack of mens rea that amounts covertly to a variation of the partially diminished capacity defense precluded by § 17(a). [T]he district court . . . was correct in instructing the jury under the circumstances not to consider this evidence in deciding whether Pohlot possessed the requisite mens rea.

Pohlot, 827 F.2d at 906-07.  Thus, because Pohlot's proffered testimony, even if believed, would not have proved he lacked the requisite mens rea, it was not admissible.

In its arguments here, the Government focuses unduly on one phrase from Pohlot that states, "[p]urposeful activity is all the law requires."  To reiterate, the Pohlot court said,

13

> In the context of the facts, both Pohlot's own
> testimony and that of Dr. Glass relate clearly
> not to Pohlot's intent in a legal sense but to
> Pohlot's meaningful understanding of his
> actions and their consequences. We often act
> intending to accomplish the immediate goal of
> our activity, while not fully appreciating the
> consequences of our acts. But purposeful
> activity is all *the law* requires.

Id. at 907 (emphasis added).  When the Pohlot court said

purposeful activity was all the law required, that was a correct

statement of "the law" of mens rea in Pohlot, where the

Government had to prove that the steps Pohlot took to kill his

wife were taken with intent to kill his wife.  When the court

noted that purposeful activity was all the law required to show

intent to kill, it was defining "intent in a legal sense."  Id.

In essence, the court was explaining that intent as it is defined

in psychology does not trump intent as it is defined in the

law.[11]  As reading the sentence in context reveals, the Pohlot

---

[11]   Throughout the Pohlot opinion the court stressed its
fear that evidence of mental condition could confuse juries
because "intent" as defined in the law of mens rea may have a
different meaning in the psychological or even lay lexicon. See
United States v. Pohlot, 827 F.2d 889, 905 (3d Cir. 1987)(non-
legal definitions of "intent" might be "malleable" or
"imprecise").   For example, in explaining why Pohlot's evidence
was not relevant to the intent element of the offense, the court
emphasized that "a lack of self-reflection does not mean a lack
of [legal] intent and does not negate mens rea." Id. at 906.
"Taken in context, suggestions [in the psychological testimony]
that Pohlot did not intend Selkow to commit murder focuses not on
Pohlot's conscious mind but on his unconscious.  To accept this
theory as a defense to mens rea requires manipulation of the
concept of intent beyond what the intent element of [the charged
crime] requires." Id. at 907.  Here, on the contrary, Defendant
is not seeking to expand the legal concept of knowledge, but

court was merely explaining that where intent to kill is the element of the offense that a Defendant seeks to disprove with psychological testimony, evidence of unconscious motives is irrelevant, especially if a Defendant concedes he acted with a purpose to kill.  See United States v. Baxt, 74 F. Supp. 2d 436, 440 (D.N.J. 1999)("Expert psychiatric testimony concerning 'unconscious motivation,' 'impaired volitional control,' or an 'inability to reflect on the ultimate consequences of one's conduct' is inadmissible.") (quoting United States v. Cameron, 907 F.2d 1051, 1061 (11th Cir. 1990)).  Purposeful action is all that the law required to show legal intent under the statute with which Pohlot was charged in that case.  The fact that he may have had a contrary unconscious motivation was not relevant.

In this case, the crimes charged are different and require not just proof of purposeful conduct, but also specific knowledge that the payments Defendant received on behalf of another were corrupt payments or bribes.  See notes 1, 2, 3, supra.  "A court's focus in assessing the admissibility of expert psychiatric testimony should be 'on the proffered link or relationship between the specific psychiatric evidence offered and the mens rea at issue in the case.'"  Baxt, 74 F. Supp. 2d at 440 (quoting United States v. Childress, 58 F.3d 693, 730 (D.C.

_____

rather to describe what knowledge he actually had, as that word is defined in the law and which is an element of his charged offenses.

Cir. 1995)).  If Defendant was not aware the bribes he took were bribes or corrupt payments he cannot be guilty.  On Count One, conspiracy, an element of the crime is that the Defendant knew the specific unlawful purpose of the payments charged in the indictment.  On Counts Two and Three, Defendant must have known the payments were made in exchange for official acts.  The Government cannot convict Defendant at trial without proving this knowledge beyond a reasonable doubt.  Thus, in this case, "knowledge" is what the law requires.

There has been no proffer from the Government that any evidence will demonstrate Defendant was actually told this payment was a corrupt payment or bribe.  The Government's request of a willful blindness instruction is a concession that the jury will be asked to draw inferential conclusions from the circumstances about what the Defendant knew.  The requested charge provides, in relevant part:

> In this case, with respect to Counts One, Two and Three, there is a question whether the defendant knew that the monies that he was receiving were, in fact, corrupt payments which the defendant accepted, in exchange for Callaway's official action by steering insurance contracts and roofing business to CW-1 and CW-2. When, as in this case, knowledge of a particular fact or circumstance is an essential part of the offense(s) charged, the government may prove that the defendant knew of the fact or circumstance if the evidence proves beyond a reasonable doubt that he deliberately closed his eyes to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by

> deliberately ignoring what is obvious. Thus,
> you may find that the defendant knew of the
> corrupt agreement based on evidence which
> proves that: (1) the defendant was aware of a
> high probability that the two payments
> constituted corrupt payments, and (2) the
> defendant consciously and deliberately tried
> to avoid learning about the corrupt payments.
> You may not find that the defendant knew that
> the two payments were in fact corrupt payments
> being provided to a public official in
> exchange for his official action if you find
> that the defendant actually believed that the
> two $1,500 payments were not corrupt payments.

Psychological evidence about the Defendant's intellectual functioning is especially relevant in a case where such a charge is given.

However, even if direct evidence of knowledge emerges at trial, a jury would be entitled to disbelieve it and to believe Defendant's version of events, which is that he was not told about the nature of the payments and did not infer the payments were corrupt from the circumstances. To the extent that Defendant's evidence is relevant to whether he had knowledge of the unlawful purpose of the conspiracy, he is entitled to present it.[12] The evidence that Defendant has proffered that tends to show he has low intelligence and problems with perception is relevant to whether he gleaned from the circumstances that the payments were corrupt or bribes. The Court shall not exclude it

---

[12] That is, he is entitled to present it subject to Rules 403, 702 and 704(b) of the Federal Rules of Evidence.

under <u>Pohlot</u> or 18 U.S.C. § 17 because it is being offered to disprove - and is relevant to - an element of the crimes with which Defendant is charged in Counts One, Two and Three.

> b.   *Court Must Scrutinize Link Between Proposed*
> *Evidence and Exact Issue in this Case*

The legal relevance of proffered psychological testimony depends on the testimony offered and the elements of the crime charged.  In <u>United States v. Baxt</u>, Baxt sought to introduce evidence that he suffered from Bipolar Disorder and Multiple Sclerosis that caused him to behave erratically and exaggerate his wealth, and also degraded his ability to problem-solve.  74 F. Supp. 2d 436.  Specifically, Baxt's experts would have testified that

> Baxt's mental illnesses resulted in "manic
> episodes complete with poor judgment, pressure
> of thought and action and grandiosity." [and]
> that mental illness "degraded [Baxt's] ability
> to  think  logically  .   .   .  and  promoted
> grandiose, impulsive behavior."

<u>Id.</u> at 441.

Baxt was charged with misrepresenting his financial assets on loan applications in violation of 18 U.S.C. § 1014, which states:

> Whoever knowingly makes any false statement or
> report,  or  willfully  overvalues  any  land,
> property  or  security,  for  the  purpose  of
> influencing  in  any  way  the  action  of  .  .  .
> any  institution  the  accounts  of  which  are
> ensured  by  the  Federal  Deposit  Insurance

>           Corporation [is guilty of an offense against
>           the United States].

As the Baxt court explained, "there are two *mens rea*
elements to the crime codified in section 1014: (1) knowledge of
the falsity of the information submitted to the bank; and (2) the
intent to influence the action of the bank." Baxt, 74 F. Supp.
2d at 439. "Consequently, expert testimony concerning Baxt's
alleged mental illness . . . is admissible if it supports either
a theory that Baxt did not know the papers he submitted were
false or a theory that Baxt lacked the intent to influence [the
bank] when he filed false statements." Id.

Because the proferred testimony in Baxt was not relevant to
either of those issues and instead, "suggests that Baxt's
behavior was excusable because Baxt's mental illnesses induced
Baxt – on some subconscious level -- to submit false statements
to Summit Trust," the court excluded it. Id. at 441.

>           That Baxt may have been overcome by certain
>           passions that are the product of his mental
>           illness -- an  impulse for grandiosity or poor
>           judgment, for example -- does not demonstrate
>           that Baxt did not know that the financial
>           statements he submitted to Summit Trust were
>           false. Likewise, it does not show that Baxt
>           did not intend to influence the actions of
>           Summit   Trust   when   he   submitted   false
>           statements to it in February and May, 1989.

Id. at 441-42. Therefore the evidence did not tend to negate
mens rea and was excluded.

In this case, the Defendant is seeking to admit scientific evidence of low intellectual functioning that tends to negate mens rea.  If Defendant proves, through his expert and any other evidence, that he has poor perception and low intellectual functioning and he argues that he did not know the payments he took were bribes, the mental condition evidence would only be relevant to that element of the crime, knowledge, and could not be considered as an "excuse."

Defendant's evidence in this case, especially as regards low intellectual functioning, is more akin to the evidence offered by the Defendant in United States v. Hayden, 64 F.3d 126 (3d Cir. 1995).  Hayden was charged under 18 U.S.C. § 922(n) for purchasing a gun while under a criminal information.  On appeal in Hayden, the Third Circuit found that an individual cannot be convicted under this statute without "knowledge that his conduct was unlawful."  Id. at 132.  At trial, Defendant had sought to admit lay and expert testimony of his low intelligence and reading abilities to show that he did not know he was under a criminal information.  Hayden had received notice of the criminal information in writing, which he claimed to not be able to understand.

The Court of Appeals overturned Hayden's conviction, finding that the evidence of his knowledge, which was an element of the charged offense, was crucial to his defense and should not have

been excluded.  The Court of Appeals found that the exclusion of the evidence of Hayden's evidence of his intellectual and reading abilities was not harmless error.  In doing so, the court noted that, "Evidence of low intelligence and reading ability is generally relevant in determining knowledge and is usually a jury question."  Id. at 134.

This Court heeds Hayden's ruling here, where the Defendant offers evidence of his low intelligence and perceptual impairments to show he did not decipher circumstances that a person of average intelligence might have figured out, where his knowledge is an element of the offense.

None of the cases the Government relies on in support of its motion counsel otherwise.  In United States v. Richards, 9 F. Supp. 2d 455 (D.N.J. 1998), another court in this District excluded lay and expert evidence of a Defendant's depression where the Defendant was charged with embezzlement.  The evidence tended to show that the Defendant did not know the transfer of funds he performed was illegal or that he intended to return the money he took.  Because those facts, even if true, would not negate the mens rea of the offenses charged, the court properly excluded the evidence of depression.  As the Court explained, the psychiatric evidence would have opined that Defendant had a state of mind that did not negate mens rea.

> At best, the defendant's psychiatric evidence
> establishes that he either thought that he was

> not doing anything wrong or that he was only
> borrowing the money despite the fact that he
> purposefully took it. That theory is entirely
> inadequate.
>
> It is well established that "a good faith
> intent to return embezzled funds does not
> negate a showing that the defendant acted with
> the requisite criminal intent to embezzle the
> funds in the first instance." <u>See</u> <u>United
> States v. Busacca</u>, 936 F.2d 232 (6th Cir.
> 1991). Similarly, Richards cannot negate
> specific intent on the grounds that his mental
> disorder made him believe that he was either
> merely borrowing the money or not actually
> stealing it. It is not pertinent whether he
> actually knew that he was committing a crime.
> Ignorance of the law is no excuse.

<u>Id.</u> at 459.

In this case, knowledge of the legality of the act is an
issue in the case and the evidence of low intelligence and
perception speaks directly to it.  Therefore, nothing in <u>Richards</u>
persuades the Court that the evidence should be excluded.

The Government further urges this Court to examine a recent
memorandum opinion by Chief Judge Brown.  In <u>United States v.
Montgomery</u>, Chief Judge Brown explained that where an expert will
merely testify as to the psychological motives for doing unlawful
acts, the evidence is barred under <u>Pohlot</u>.  <u>United States v.
Montgomery</u>, Crim. No. 07-349(GEB), 2007 U.S. Dist. LEXIS 72614
(D.N.J. Sept. 28, 2007) (Mem. Op.).  This Court agrees with
<u>Montgomery</u>.  But the <u>Montgomery</u> case is not useful to the Court's
analysis of the precise issues it faces here.  In this case, the
expert will not opine at all on whether or why Defendant engaged

22

in certain conduct, but will only seek to explain to the jury Defendant's impaired intellectual functioning.  Thus, the testimony is not seeking to excuse Defendant's unlawful acts, but only to help the jury determine whether they occurred with his specific knowledge.  Therefore, nothing in <u>Montgomery</u> persuades this Court to exclude the evidence of intellectual and perceptual functioning.

The Government must prove not only purposeful action, but also that the Defendant knew the payments he accepted were bribes.  In such a case, the Defendant is of course permitted, under Federal Rule of Evidence 401 and 18 U.S.C. § 7, to put on evidence tending to show he did not have such subjective knowledge.  In its selective quotation from <u>Pohlot</u>, the Government has glossed over the differences between the elements of the crimes charged and the psychological evidence offered in that case and this one.  In this case, the fact that the proffered expert evidence does not negate purposeful conduct does not render it inadmissible because it does tend to negate knowledge and because Defendant's actual knowledge is an element of the crimes charged here.  The evidence is relevant to knowledge and therefore will not be barred under 18 U.S.C. § 17.  There has been no other requested basis for exclusion at this stage.

*c.  Evidence of Suggestibility Barred*

23

The suggestibility evidence, however, is not relevant to whether Defendant knew the purpose of the conspiracy or the purposes of the payments he accepted.  As defense counsel has characterized the expert evidence on suggestibility, that evidence tends to show that Defendant acts to please others and will change his behavior easily under pressure from others, regardless of what he knows.  Accordingly, even if Defendant was told that the payments were lawful, and there has been no proffer of that, the suggestibility evidence implies that if Defendant disbelieved that misinformation, and knew the payments were unlawful, he might still act unlawfully.  In any event, whether Defendant is suggestible is not relevant to whether he knew the purpose of the conspiracy or of the payments and therefore the psychological evidence of suggestibility is inadmissible under Pohlot, Baxt, Richards, and Montgomery.

### 2.   Lack of Diagnosis

The next issue the Court shall address is whether the expert's failure to diagnose the Defendant with a mental illness or to determine that the Defendant is mentally retarded renders the evidence inadmissible under Pohlot and 18 U.S.C. § 17. (See Gov't Br. at 2.)

As explained above, Pohlot and 18 U.S.C. § 17 do not bar the evidence of impaired intellectual and perceptual functioning because it is relevant to an element of the offenses.  However,

24

the Court has an obligation as the gatekeeper of expert testimony to determine whether such evidence should be admitted under Fed. R. Evid. 702.  The court is concerned about how useful the expert evidence of diminished intellectual functioning may be to a jury in this case, given that there is no diagnosis.  Cf. United States v. Rahm, 993 F.2d 1405 (9th Cir. 1993) (analyzing whether evidence from WAIS-III and other testing that shows perceptual deficits is helpful to the jury under Rule 702).  "Ascertaining whether proposed expert testimony is offered to negate the mens rea element of an offense is only the initial step in determining whether such expert testimony is admissible; once this hurdle is overcome, the testimony will be admitted only if it satisfies the requirements of Rules 702 and 403 of the Federal Rules of Evidence."  Baxt, 74 F. Supp. 2d at 441 (citing United States v. Libutti, Crim. No. 92-611, 1994 U.S. Dist. LEXIS 19913, 1994 WL 774646, at *4-5 (D.N.J. Feb. 8, 1994)).

Because neither party has adequately addressed the issues relevant to whether the evidence is admissible under Federal Rules of Evidence 702 and 403 apart from the Pohlot restrictions and because the Court has continued concerns whether expert testimony may be helpful to the jury in this case, the Court needs further briefing from the parties on this matter after a hearing with Dr. Frumkin, pursuant to Rule 104.

3.    Opinion About What Defendant Actually Knew

25

The Government also objects to Dr. Frumkin's testimony because the proffered expert cannot opine whether Defendant actually knew that the money he accepted was a bribe.  The Government's argument is misplaced on this point and the testimony will not be barred on this ground.  Such testimony would be an opinion on an ultimate issued, barred by Federal Rule of Evidence 704(b).  See United States v. Watson, 260 F.3d 301, 310 (3d Cir. 2001) ("Rule 704(b) prohibits any expert from testifying about the defendant's actual mental state.").

As explained above, the intelligence, perception and processing evidence are relevant to a fact at issue in the case, whether Defendant knew, at the time of the offense conduct, whether the payments were bribes.  The expert testimony is admissible, subject to Rules 702 and 403, because it is relevant.  Evidence does not have to prove a fact at issue with certainty to be relevant to that fact under Federal Rule of Evidence 401.  Nor does Pohlot require such a heightened standard for evidence of mental condition.  See, e.g., Baxt, 74 F. Supp. 2d at 442 (evidence negates mens rea "by tending to prove" the Defendant did not act with requisite mens rea).

Furthermore, the Government's insistence that the expert state whether or not the Defendant knew the payments were bribes actually runs afoul of the Federal Rules of Evidence.  Rule 704(b) states:

26

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Thus, "expert testimony is admissible if it merely 'supports an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.'" United States v. Bennett, 161 F.3d 171, 183 (3d Cir. 1998) (quoting United States v. Morales, 108 F.3d 1031, 1038 (9th Cir. 1997)). "The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." Id. at 183 n.4 (quoting United States v. Richard, 969 F.2d 849, 854-55 (10th Cir. 1992)).

Expert testimony about Defendant's intellectual and perceptual capabilities supports an inference the jury could make that Defendant did not know that the payments were bribes, even though an average person might have known, because he has inferior intellectual functioning. However, the expert's opinions, if granted, do not compel the jury to find Defendant lacked that knowledge. The jury could believe he has impaired intelligence, processing and perception but that he was still

aware of the nature of the payments.  Thus, the expert's opinions
and proffered testimony comply with Rule 704(b) and will not be
prohibited on the grounds that Dr. Frumkin's report does not draw
the ultimate conclusion as to legal knowledge, an issue on which
he would be barred from offering his opinion.  See United States
v. Watson, 260 F.3d 301, 309 (3d Cir. 2001) (Rule 704(b) violated
when question to Government expert is designed to elicit expert's
conclusion on mens rea of Defendant or when expert offers that
conclusion without such a question).

## IV.   CONCLUSION

Defendant Louis Mister seeks to introduce evidence at trial
through an expert that he has impaired intellectual functioning
and perception in order to prove that he did not know the money
he received was a bribe or corrupt payment.  Because such
knowledge is an element of the offenses charged in Counts One,
Two and Three of the Superseding Indictment, that evidence will
not be barred, subject to a hearing under Federal Rule of
Evidence 104 and a decision under Rules 702 and 403 on whether
the proffered evidence would be sufficiently helpful to the jury.

However, because evidence of Defendant's suggestibility is
not relevant to negating any element of the charged crimes in
this case, including what he knew, it is barred.  An appropriate
Order shall be entered.


**April 18, 2008**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            U.S. District Judge