IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

        v.                              Criminal No. 07-1014 (JBS)

LOUIS MISTER,
                                                OPINION
                Defendant.

APPEARANCES:

Brian Reilly, Assistant Federal Public Defender
Lisa J. VanHoeck, Assistant Federal Public Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
22 South Clinton Avenue
Station Plaza No. 4
4th Floor
Trenton, NJ 08609
    Attorneys for Defendant

Jenny R. Kramer, Assistant United States Attorney
Hallie Mitchell, Assistant United States Attorney
OFFICE OF THE US ATTORNEY
970 Broad Street
Suite 700
Newark, NJ 07102
    Attorneys for the United States of America

**Simandle, District Judge:**

I.    **BACKGROUND**

        Defendant Louis Mister was charged in a four-count

superseding indictment with (1) conspiracy in violation of 18

U.S.C. § 1951(a) (the Hobbs Act), for agreeing to accept money on

behalf of Maurice Callaway in exchange for Callaway's official

action in obtaining Pleasantville Board of Education ("PBOE")

contracts; (2) extortion in violation of 18 U.S.C. § 1951(a) and

Section 2, by obtaining money for Callaway in exchange for

Callaway's official action, and Section 2, by aiding and
abetting; (3) acceptance of corrupt payments with intent to
influence and reward a PBOE official, in violation of 18 U.S.C. §
666(a)(1)(B) and Section 2, by aiding and abetting and accepting
cash payments for Callaway with the intent for Callaway to be
influenced and rewarded on transactions with a value in excess of
$5,000; and (4) attempted interference with commerce by extortion
under color of official right in violation of 18 U.S.C. § 1951(a)
and Section 2, by working to appoint James McCormick to the
Pleasantville Board Of Education (PBOE) and obtaining money for
McCormick in exchange for McCormick's official action on the
PBOE.  For Counts One, Two, and Three, the Government had to
prove that Defendant knew the payments he was accepting for
Callaway were corrupt payments or bribes.

Defendant pled not guilty on all counts and the case was
tried to a jury.  On May 14, 2008, the jury returned a verdict
convicting Mister on Counts 2 and 3, aiding and abetting
extortion and aiding and abetting a corrupt payment, and finding
him not guilty on Counts 1 and 4, conspiracy with Maurice
Callaway and aiding and abetting extortion by James McCormick.
This motion for acquittal or a new trial followed.

**II.   STANDARDS**

Under Rule 29(c) of the Federal Rules of Criminal Procedure,

> a court may enter a judgment of acquittal if it
> finds that as a matter of law the evidence is

2

insufficient to sustain a conviction. In reviewing a motion for Judgment of Acquittal, the court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'" United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002) (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir. 2001)). Further, the court is required to draw "'all reasonable inferences in favor of the jury's verdict.'" Smith, 294 F.3d at 476-77 (quoting United States v. Anderskow, 88 F.3d 245, 251 (3d Cir. 1996)).

The defendant must also overcome the jury's special province in evaluating witness credibility and conflicting testimony. United States v. Hakim, 2002 U.S. Dist. LEXIS 18151, No. 02-CR-131, 2002 WL 31151174, at *6 (E.D. Pa. Sept. 24, 2002) (citing United States v. McGlory, 968 F.2d 309, 321 (3d Cir. 1992)). Further, the court in United States v. Scarfo, 711 F. Supp. 1315, 1334 (E.D. Pa. 1989) held that "a court may not grant a motion for acquittal based on conflicting testimony, that is, testimony of a questionable quality; it is up to the jury to weigh conflicting testimony, determine credibility, and ultimately draw factual inferences." Thus, "a finding of insufficiency should be confined to cases where the prosecution's failure is clear." Smith, 294 F.3d at 477 (quoting United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984)).

United States v. Carmichael, 269 F. Supp. 2d 588, 594-95 (D.N.J. 2003) (Simandle, J.).

[A] trial court's ruling on the sufficiency of the evidence is governed by strict principles of deference to a jury's findings. In deciding whether to grant the motions for acquittal, the trial court [is] required to view the evidence in the light most favorable to the prosecution and to draw all reasonable inferences therefrom in the government's favor. Viewing the evidence in this light, the trial court [is] obliged to uphold the jury's verdict unless no rational jury could conclude

3

> beyond a reasonable doubt that the defendant[]
> willfully attempted to evade [his] tax obligations.

United States v. Ashfield, 735 F.2d 101, 106 (3d Cir. 1984)

(citations omitted).  "'The burden on a defendant who raises a

challenge to the sufficiency of the evidence is very high.'"

United States v. Iglesias, No. 06-4426, 2008 U.S. App. LEXIS

15830, slip op. at 6 (precedential) (quoting United States v.

Lore, 430 F.3d 190, 203-04 (3d Cir. 2005)). The Court looks at

all the evidence in the light most favorable to the Government.

In fact, purely circumstantial evidence is sufficient to sustain

a conviction against a Rule 29 challenge.  United States v. Bobb,

471 F.3d 491, 494 (3d Cir. 2006), cert. denied, 127 S. Ct. 2083

(2007).

Federal Rule of Criminal Procedure 33(a) states that "upon

the defendant's motion, the court may vacate any judgment and

grant a new trial if the interest of justice so requires."  Such

a remedy is available in exceptional cases where an injustice

would occur if the court failed to act.  United States v.

Lebovitz, 586 F. Supp. 265, 267 (W.D. Pa.), aff'd, 746 F.2d 1468

(3d Cir. 1984); United States v. Phifer, 400 F. Supp. 719, 722

(E.D. Pa. 1975), aff'd, 532 F.2d 747 (3d Cir. 1976).  Rule 33

affords relief if the trial court finds prosecutorial misconduct

or when the trial court does not believe the evidence supports

the jury's verdict.  United States v. Dixon, 658 F.2d 181, 193

(3d Cir. 1981) (reversing judgment of acquittal but remanding for

4

consideration whether to grant new trial under Rule 33 on grounds

of juror confusion and insufficient limiting instructions).

> This Circuit has described a district court's
> consideration of a Fed. R. Crim. P. 33 motion for a
> new trial based on the "weight of the evidence" as
> follows: A district court can order a new trial on
> the ground that the jury's verdict is contrary to
> the weight of the evidence only if it "believes
> that 'there is a serious danger that a miscarriage
> of justice has occurred--that is, that an innocent
> person has been convicted.' " United States v.
> Santos, 20 F.3d 280, 285 (7th Cir. 1994) (quoting
> United States v. Morales, 902 F.2d 604, 606 (7th
> Cir. 1990)). Unlike an insufficiency of the
> evidence claim, when a district court evaluates a
> Rule 33 motion it does not view the evidence
> favorably to the Government, but instead exercises
> its own judgment in assessing the Government's
> case. See United States v. Lacey, 219 F.3d 779,
> 783-84 (8th Cir. 2000); United States v. Ashworth,
> 836 F.2d 260, 266 (6th Cir. 1988). United States v.
> Johnson, 302 F.3d 139, 150 (3d Cir. 2002). Thus,
> "motions for a new trial based on the weight of the
> evidence are not favored. Such motions are to be
> granted sparingly and only in exceptional cases."
> Government of Virgin Islands v. Derricks, 810 F.2d
> 50, 55 (3d Cir. 1987) (citations omitted).

United States v. Brennan, 326 F.3d 176, 188-89 (3d Cir. 2003).

Although none of the alleged errors complained of here was

the subject of an objection at trial, the Court may consider them

pursuant to those standards.

## III. DISCUSSION

### A.   Whether Government Proved Defendant Knew Callaway was Promising Influence as a Member of the PBOE

Defendant argues that a judgment of acquittal should be

entered as to Counts Two and Three because the Government failed

to prove that Defendant knew the money received from Bruce Begg

5

was in exchange for Maurice Callaway's influence as a
Pleasantville Board of Education member and because the
Government failed to prove Defendant knew Callaway was to use his
influence to obtain contracts from the PBOE.

The Defendant points to the Indictment, which in paragraph
one of Count Two stated that "Paragraphs 1 and 3 to 5 of Count 1
are hereby incorporated and realleged as if fully set forth
herein."  Those paragraphs stated, with emphasis added,

> 1.   At all times relevant to Count 1 of this
> Indictment:
> a.   Defendant LOUIS SERVON MISTER was the
> President of the Pleasantville Real Democratic
> Club, a political organization dedicated to
> electing public officials in and around
> Pleasantville, New Jersey.
> b.   Maurice Callaway ("Callaway") served as a
> member of the Pleasantville Board of Education
> (hereinafter "PBOE").   In his capacity as an
> elected board member, Callaway's duties included,
> but were not limited to, participating in the
> allocation of school district resources,
> establishing district policy and approving certain
> district expenditures and contracts, to include
> contracts for insurance brokerage services and
> roofing services.
> c.   Two cooperating witnesses ("CW-1" and "CW-
> 2") purported to be representatives of companies
> capable of providing insurance brokerage services
> (the "Insurance Brokerage Business") and roofing
> services (the "Roofing Business") to governmental
> entities.   As represented by these individuals,
> these businesses were based in New Jersey, did
> business in various states, and paid for goods and
> services in interstate commerce.
>
> [...]
>
> 3.   It was the object of the conspiracy that
> defendant LOUIS SERVON MISTER and Callaway accepted

and agreed to accept corrupt cash payments from the CWs <u>in exchange for Callaway's official action and influence in obtaining PBOE contracts and business for the Cws as specific opportunities arose, to include PBOE roofing contracts and business</u>.

4.  It was part of the conspiracy that on or about June 5, 2006, in Egg Harbor Township, New Jersey, defendant LOUIS SERVON MISTER, as Maurice Callaway's intermediary, accepted a corrupt cash payment of $1,500 from CW-2, in the presence of, and at the direction of and on behalf of, Maurice Callaway.

5.  It was further part of the conspiracy that, on or about June 5, 2006, approximately 2 to 3 hours after accepting the corrupt payment described in paragraph 4, defendant LOUIS SERVON MISTER accepted a second corrupt cash payment of $1,500 from CW-2 at the direction, and on behalf of, Maurice Callaway.

Count Two further alleged in paragraph 2:

On or about June 5, 2006, in Atlantic County, in the District of New Jersey and elsewhere, defendant
                    LOUIS SERVON MISTER
did knowingly and willfully aid and abet an attempt to obstruct, delay and affect interstate commerce by extortion under color of official right – that is, by obtaining money on behalf of Maurice Callaway, that was paid by another, with that person's consent, in exchange for Callaway's official action and influence as specific opportunities arose.
        In violation of Title 18, United States Code, Section 1951(a) and Section 2.


    Count Three also incorporated paragraphs 1 and 3 to 5 of

Count 1 by reference and further alleged:


2.  The PBOE was a local government agency that received federal assistance in excess of $10,000 during the relevant one-year period.

3.  On or about June 5, 2006, in Atlantic County, in the District of New Jersey and elsewhere, defendant

LOUIS SERVON MISTER
did knowingly, willfully, and corruptly aid and
abet the solicitation and demand for the benefit of
Maurice Callaway, and the acceptance and agreement
to accept from another, cash payments totaling
approximately $3,000 for the benefit of Callaway,
with the intent for Callaway to be influenced and
rewarded in connection with a business, transaction
and series of transactions of the PBOE involving a
thing of value of $5,000 or more – to include PBOE
roofing contracts and business.
In violation of Title 18, United States Code,
Section 666(a)(1)(B) and Section 2.

Defendant argues that in order to sustain a conviction on

Counts Two and Three of the Indictment, the Government was

required to prove that Mister knew Callaway was committing the

offenses charged in the Indictment and that because the

Indictment was drawn with specificity, that required the

Government to show Defendant knew the $3,000 received on June 5,

2006 was in exchange for Callaway's influence as a PBOE member to

obtaining roofing contracts and other business for Begg.

Defendant argues that proof that Defendant knew the payment was

corrupt would not suffice, but that the specific quid pro quo had

to be also within Defendant's knowledge.  The Government does not

dispute that this was its burden.

At trial, the Government presented an audio and video

recording of the Defendant accepting cash from Bruce Begg on two

occasions.  (Gov't Trial Ex. 2a.)  These are the alleged bribes

and Defendant claims that there is insufficient evidence to show

that Defendant knew what the purpose of the money he was

8

accepting.  The video shows the Defendant getting into the front
passenger seat of Bruce Begg's parked vehicle while Pete Callaway
gets into the back seat behind Defendant.  A conversation ensues
between Callaway and Begg.  Mister sits beside Begg and does not
engage in the conversation, but does receive the cash on
Callaway's behalf and counts it.  The conversation before
Defendant receives the cash refers to Begg's plans to speak with
a man named Mr. Rice, whose boss, according to Callaway, is
"Speedy Marsh":

     Begg:     So Speedy's like what?  Head of
                  buildings and grounds or something?
     Callaway: Yeah, you go it.  Head of facilities.

     Begg:     Okay.  Alright.  That's good.  I'll ah,
                  I'll ah, I'll get together with him
                  [reaching for money].

     Callaway: Yeah, you can give it, give it to him
                  [nodding towards Mister] . . . And, uhm,
                  if there's any problems, me and him will
                  take care of it.  Me and the guy you
                  gonna meet with.

     Mister:   [Counting money]

     Begg:     Okay.

     Callaway: Try to get you on the right step, and
                  then you know, you looking at the big
                  stuff, here.

     Begg:     Right.  Right.

     Callaway: You know, the schools - the complete
                  schools.

     Begg:     Right.  Right.

(Id. at 3-4.)

The video evidence showed Defendant Mister was present for this entire conversation.  This conversation about "the complete schools" in a parked car, in an "empty lot" (id. at 5) provided the jury with sufficient evidence to conclude that Mister knew the money he accepted and counted for Pete Callaway was a bribe in exchange for Callaway's influence on the school board to steer contracts to Bruce Begg.  Later that day, Mister met Begg again and picked up more cash.

During the first transaction, Mister's cellphone rang twice and he quickly concluded each conversation.  Defense counsel argued Mister was not paying attention to the conversation between Begg and Callaway.  Mister did not engage in the conversation and there was psychological evidence admitted at trial that Mister had trouble processing information.  Callaway testified that he told Mister he was picking up campaign money and that he did not want Mister to know about the bribery scheme. (Callaway Tr. May 8, 2008 at 503:24-25, 507:23 to 508:25.)  The jury also heard evidence that the election for council was the next day.

Defense counsel argued strenuously to the jury that Mister did not actually know that the money he received from Bruce Begg was a bribe in exchange for Callaway's official action on the school board.  The jury rejected this conclusion and found

10

instead that Defendant did have that specific knowledge.  The circumstantial and direct evidence, including the recorded conversation Defendant witnessed, were sufficient for the jury to make such a finding.  Thus, viewing the evidence in the light most favorable to the prosecution, as the Court must, there is sufficient evidence from which the jury could have found that Defendant knew he was aiding and abetting the specific unlawful acts charged in the indictment, as charged in Counts Two and Three.  The Court shall therefore deny the Rule 29 motion.

    **B.**    **Whether Government Constructively Amended Indictment by Proving Mister Aided and Abetted Extortion and Solicitation of Corrupt Payment in Exchange for Callaway's Influence as Future Council Member**

Alternatively, Defendant argues that he is entitled to a new trial under Rule 33 because the Government presented evidence and argument that the purpose of the corrupt payments was to steer contracts to bribe payors through influence on the Pleasantville Council, rather than through influence on the PBOE as the Indictment charged.  This argument and evidence, along wit the Court's instruction on knowledge, purportedly make it likely that Defendant was convicted of a crime with which he was not charged, aiding and abetting Callaway's corruption on city council.

The Defendant has a Fifth Amendment right to be tried only on the charges indicted by the grand jury.  <u>See</u> U.S. Const. Amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment

11

of a Grand Jury.").

> A constructive amendment occurs where a defendant is deprived of his "substantial right to be tried only on charges presented in an indictment returned by a grand jury." <u>United States v. Miller</u>, 471 U.S. 130, 140, (1985) (quoting <u>Stirone v. United States</u>, 361 U.S. 212, 217 (1960)) (internal quotation marks omitted). A constructive amendment to the indictment constitutes "a per se violation of the fifth amendment's grand jury clause." <u>United States v. Castro</u>, 776 F.2d 1118, 1121-22 (3d Cir. 1985).

<u>United States v. Syme</u>, 276 F.3d 131, 148 (3d Cir. 2002).

"Moreover, the Sixth Amendment guarantees that criminal defendants be given sufficient notice of the nature of the charges in order to defend against them." <u>United States v. Thomas</u>, 610 F.2d 1166, 1173 (3d Cir. 1979).

> [T]wo types of variations between the indictment and evidence exist: amendments, which occur when the charging terms of the indictment are altered, and variances, where the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. [<u>United States v. Somers</u>, 496 F.2d 723, 743 n.38 (3d Cir.), <u>cert. denied</u>, 419 U.S. 832 (1974)] (quoting <u>Gaither v. United States</u>, 413 F.2d 1061, 1071 (D.C. Cir. 1969). The difference between these variations is not merely academic, for we observed that Supreme Court precedent indicated that if the variation were characterized as an amendment, it would constitute a per se violation of the fifth amendment's grand jury clause. <u>Somers</u>, 496 F.2d at 743. Variances, however, are subject to less strict case-by-case inquiry, and would only constitute reversible error in those cases where the variance prejudiced the defendant's defense. <u>Id.</u> at 743-44. Our analysis led us to conclude that:
>
>> in evaluating variances, we must first determine whether there has been a

> modification in the elements of the crime charged . . . . If such a modification exists, we will apply the per se rule of [Stirone v. United States, 361 U.S. 212 (1960)] so as to preserve the shielding function of the grand jury. If, on the other hand, the variance does not alter the elements of the offense charged, we will focus upon whether or not there has been prejudice to the defendant. . . .

> Somers, 496 F.2d at 744 (citations omitted).

United States v. Castro, 776 F.2d 1118, 1122 (3d Cir. 1985).

In this case, as explained below, there has been no modification of the elements of the charged crimes and no prejudice to Defendant.  Because the Court finds that it was highly unlikely the jury convicted on the uncharged theory that Plaintiff was aiding and abetting Callaway's corruption on the Pleasantville Council, the Court shall deny the motion for a new trial the grounds that the conviction was the result of an unconstitutional constructive amendment to or variation from the indictment.

1.   Jury Instructions on Knowledge and Aiding and Abetting

The jury instruction on knowledge stated that,

> in determining whether a defendant acted knowingly and willfully, the Government need not establish that he knew that he was breaking any particular law.  Ignorance of the law is no excuse.

13

There was no objection to this charge at trial but Defendant now argues that this charge was improper because, with regard to aiding and abetting, the Court should have charged that Defendant needed to know the specific crime that he was helping Callaway to commit.

The Court did so instruct in the aiding and abetting and substantive charges.  The aiding and abetting instruction properly stated the law in this Circuit:

> As previously mentioned, Counts Two, Three and Four of the Indictment specifically charge the defendant with aiding and abetting . . .In this case, the government alleges in Count Two that defendant Louis Mister aided and abetted Maurice Callaway in committing extortion as charged in the indictment. In Count Three, the Government alleges that defendant Louis Mister aided and abetted corrupt payments for the benefit of Maurice Callaway as charged in the indictment. . . .Thus, to convict Louis Mister as an aider and abettor, the government must prove that the underlying crimes charged in Counts Two and Three were actually committed by Maurice Callaway and that Louis Mister knowingly aided Callaway in committing those crimes; and that the underlying crime charged in Count Four was actually committed by James McCormick and that Louis Mister knowingly aided and abetted McCormick in committing that crime.
>
> In the remaining instructions, therefore, I will first instruct you on the essential requirements for aiding and abetting that apply to Louis Mister for each of Counts Two, Three and Four.  I will then instruct you on the elements of the underlying crimes that the government must prove were actually committed by the principals, Maurice Callaway (Counts Two and Three) and James McCormick (Count Four).
>
> In order to find Louis Mister guilty of these offenses because he aided and abetted another in committing these offenses, you must find that the government proved beyond a reasonable doubt each of

following four (4) requirements:

*First*, that someone else committed the offenses charged by committing each of the elements of the offenses charged, as I will explain those elements to you in these instructions. (That other person need not have been charged with or found guilty of the offenses, however, as long as you find that the government proved beyond a reasonable doubt that he committed the offenses).

*Second*, that Louis Mister knew that the offenses charged were going to be committed or were being committed by that other person, and

*Third*, that Louis Mister did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the offenses and that Louis Mister acted with the intent that the principal commit the offenses, and

*Fourth*, that Louis Mister's acts did, in some way, aid, assist, facilitate, or encourage, the principal to commit the offenses.  If so, Louis Mister's acts need not by themselves be against the law.

Evidence that Louis Mister was merely present during the commission of the offenses is not enough for you to find him guilty as an aider and abetter. In addition, if the evidence shows that Louis Mister knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was Louis Mister's intent and purpose to aid, assist, encourage, facilitate or otherwise associate himself with the offense, you may not find Louis Mister guilty of the offenses as an aider and abetter.  The government must prove beyond a reasonable doubt that Louis Mister in some way participated in the offense committed by the principal as something Louis Mister wished to bring about and to make succeed.  If the government fails to prove that the underlying crime was committed by the principal, or that Louis Mister lacked knowledge that the principal was committing the

15

> underlying crime, then you must find Louis Mister
> not guilty of the crime of aiding and abetting
> charged in Counts Two, Three or Four.

(Instr. 47, Counts Two, Three and Four – Aiding and Abetting

Others in the Commission of Crimes.)

For Count Two, the jury was specifically directed to

consider whether Mister aided and abetted the conduct charged in

the indictment:

> Count Two alleges that on or about June 5, 2006,
> defendant Louis Mister aided and abetted an attempt
> to obstruct interstate commerce by extortion by
> obtaining money on behalf of Maurice Callaway, that
> was paid by another, with that person's consent, in
> exchange for Callaway's official action and
> influence as specific opportunities arose in
> Callaway's capacity as a member of the PBOE.

(Instr. 48, Counts Two & Four: Attempted Obstruction of

Interstate Commerce by Extortion Under Color of Official Right.)

There can be no doubt that the jury's task was, for Count Two, to

determine whether Mister aided and abetted Callaway's actions in

awarding contracts as a PBOE member.  (Indeed, the jury

determined that Defendant was not guilty of aiding and abetting a

separate extortion charged in Count Four.)

For Count Three, the Court also instructed the jury that it

must find Mister aided and abetted the specific conduct charged

in the indictment, including that Callaway was accepting the

payments in exchange for promising to steer PBOE contracts to

Begg's roofing busines:

16

Count Three of the Indictment charges the defendant with aiding and abetting a public official, namely Maurice Callaway, in corruptly accepting and agreeing to accept $3,000 from CW-2 (that is, Bruce Begg) in exchange for Callaway's influence in awarding PBOE business for roofing services to the company of the bribe-payor.

(Instr. 54, Count Three - Corrupt Demand & Acceptance: Statute and Elements.)

To find the defendant guilty of the offense of corruptly accepting or agreeing to accept a thing of value, you must find that a local government agent (namely, Maurice Callaway, who was a member of the Pleasantville Board of Education) knowingly, willfully and corruptly demanded or accepted something of value, such as money and that defendant Louis Mister knowingly and willfully aided and assisted him in doing so.

(Instr. 55, Count Three - First Element: Acceptance of Something of Value.) "The business or transaction at issue in Count Three involved roofing services contracts which the alleged bribe payers hoped to obtain from the Pleasantville Board of Education through the allegedly corrupt influence of Maurice Callaway."

(Instr. 57, Count Three - Third and Fourth Elements: Excess of $10,000 in Federal Funds and $5,000 Transaction.)

To sum up, to find the defendant guilty of the crime charged in Count Three, you must find beyond a reasonable doubt that the defendant knowingly and willfully aided Maurice Callaway in knowingly, willfully and corruptly soliciting, demanding, accepting or agreeing to accept a thing of value; that Maurice Callaway intended to be influenced with regard to the affairs of the Pleasantville Board of Education; that this involved a business, transaction or series of transactions of $5,000 or more; and that the Pleasantville Board of Education received in excess of $10,000 in federal funds

17

during a particular one-year period.

(Instr. 58, Count Three - Summary of Elements Corrupt Demand and Acceptance.)

Nothing in the jury instructions altered the jury's obligations to determine whether Mister knew of the specific offenses he was accused of aiding and abetting in Counts Two and Three of the Indictment and also to determine whether Mister performed acts intending to accomplish those specific offenses. When error is alleged in the jury instructions, the Court examines the alleged error in context and views the instructions as a whole.  United States v. Coyle, 63 F.3d 1239, 1245 (3d Cir. 1995) ("As on all occasions when we consider jury instructions we consider the totality of the instructions and not a particular sentence or paragraph in isolation.").  The jury was repeatedly instructed that it could not convict Defendant unless it found that he knew he was assisting the specific crime charged in the indictment.  Thus, it was highly unlikely that the jury convicted on a crime not charged in the indictment.  Therefore, the Court shall deny the Rule 33 motion on that basis.

    2.  Government's Argument and Evidence

Defendant argues that the alleged erroneous instruction compounded the Government's inappropriate argument and evidence. According to Defendant, during the trial the Government introduced evidence that Defendant told Jayson Adams, a school

18

board member who was allegedly coordinating the bribe payments to other school board members in Pleasantville and across the State, that they needed to take control of Pleasantville Council and then go after the contracts.  Defendant alleges the Government repeated this evidence in closing argument and thereby confused the jury about its ability to convict Defendant so long as he knew he was assisting some corruption, even if he thought it was corruption on the Pleasantville Council.

Because of the Court's specific and clear aiding and abetting instructions, the Court has determined that it is highly unlikely the jury convicted on an improper basis, as discussed above.  Furthermore, the argument and evidence presented by the Government do not undermine that determination, as explained further below.  Thus, there is no basis for granting a Rule 33 motion.

Defendant misconstrues the evidence presented at trial.  In a recorded conversation between Defendant, a co-conspirator (Jayson Adams), and cooperating witnesses, Defendant discussed his intent to aid corruption on the Pleasantville School Board. (Govt. Trial Ex. 10a.)  This evidence was relevant to the charge in Count Four, Defendant's alleged attempt to get James McCormick onto the school board for corrupt purposes.  The Government permissibly focused on this evidence and did not seek to vary the charges in Counts Two or Three by doing so.

19

Viewing Defendants' statements in context, it becomes clear that when Defendant referred simply to "Pleasantville," he was referring to the Pleasantville school board, as the parties had been discussing how to corrupt Hamilton Township's school board. (Gov't 10a at 3.)  The reference to "Pleasantville" therefore, distinguishes the two towns but keeps the conversation focused on school boards.

> [Jayson Adams:] Just need to maintain control of that school board that's all.
>
> [Defendant Louis Mister:] Need to take hold of Pleasantville.    Then    you    take    control    of Pleasantville, uh, council and uh, then we go after the contracts.

(Gov't Trial Ex. 10a at 6.)  Defendant's first reference to "Pleasantville" thus appears to be a reference to the Pleasantville PBOE itself, the school board.  The second reference, "Then you take control of Pleasantville . . . council," refers to the council of Pleasantville.  The word "then" clearly indicates both to the Court and to a jury that Defendant was talking about corrupting two distinct entities: first corrupt the school board, then corrupt the council. Defendant also went on to talk about efforts to unseat the Mayor. (Id. at 7.)  Thus, this evidence shows that in Defendant's mind, the effort to corrupt the PBOE was part of a larger scheme to corrupt the whole town, which he described after saying that the parties needed to take hold of the Pleasantville PBOE.  It was

20

not error for the Government to refer to this evidence.  Although
not the subject of this post-trial motion practice, Count Four
charged Defendant with attempting to "take hold of" the PBOE by
helping to find a new member of the school board, James
McCormick, who would vote for corrupt contracts.  Thus, this
evidence of Defendant speaking about Pleasantville and PBOE
corruption was admissible to show that Defendant was aware of and
intentionally participated in the scheme to take hold of the
Pleasantville PBOE by appointing a new corrupt member.

     The Government began its closing statement by referring to
these statements by Defendant:

          We need to get ahold of Pleasantville.  Then we
          take control of Pleasantville and then we go after
          the contracts.
               Those are the words of the Defendant, Louis
          Mister, on August 23rd, 2006.

(Tr. May 13, 2008 at 928:6-12.)  Ms. Mitchell also said:

          Ladies and gentlemen, I would like to leave you
          with what I started, and that is what the
          Defendant himself said.  He said, We need to take
          hold of Pleasantville.  When we get control of
          Pleasantville council, then we go after the
          contracts.

(Id. at 950:1-5.)  There was no objection that these statements
were inaccurate or that they asked for the jury to convict on an
improper ground.

     Similarly, in the rebuttal statement, the Government said,

          These were not a series of coincidences that he

21

> just happened to be at these meetings and take the
> cash and go on August 23rd and talk about locking up
> contracts.   They're not coincidences, ladies and
> gentlemen.   They're evidence.

(Id. at 1030:17-20.)

Taken together, Defendant argues, these statements and the
instruction on knowledge improperly communicated to the jury that
they could find Defendant guilty on Counts Two and Three if they
found that Defendant knew he was aiding and abetting corruption
on the council.  Defendant argues that such a finding would be
improper because the indictment specifically refers to corruption
on the school board.  While the Court agrees that it would be
improper for the jury to convict on such a corruption-of-council
theory, the Court finds it highly unlikely that it did so, given
the context of the evidence and the Count of the indictment to
which it was directly relevant.

Defendant's statements that he and his co-conspirators
"need[ed] to take hold of Pleasantville," was a reference to the
alleged scheme to appoint James McCormick to the PBOE as charged
in Count Four of the indictment.  It was proper for the Court to
admit the evidence and for the Government to refer to it in
closing.  In light of the clear instructions on Counts Two and
Three and the absence of any objections to the evidence, the
argument, or the jury instructions, the Court finds there was no
danger that the jury was confused about the purpose of this

evidence.

Furthermore, the conviction on Counts Two and Three was not against the weight of evidence and there is no indication to the Court that upholding the jury's findings would create a miscarriage of justice.

### C.   Whether Defendant Entitled to New Trial Because Government Improperly Argued Guilt by Association

Defendant argues that the Government violated his right to Due Process by arguing to the jury that he was guilty because of his association with criminals or other people who pled guilty.

> "Improprieties in a prosecutor's remarks warrant a new trial only if they are so gross that there is a probability of prejudice to the defendant[] and such prejudice was not neutralized by the court." United States v. Gaines, 726 F. Supp. 1457, 1469 (E.D. Pa. 1989), aff'd, 902 F.2d 1562 (3d Cir.), cert. denied, 498 U.S. 844, 112 L. Ed. 2d 96, 111 S. Ct. 128 (1990).   "Moreover, any harm from prosecutorial misconduct must affect a substantial right and the prejudice must be balanced against the evidence of guilt." Gaines, 726 F. Supp. at 1469; see Gonzalez, 833 F.2d at 1467 ("Given the overwhelming evidence against [the defendant], her substantial rights were not prejudiced by the . . . remark of the prosecutor."). As the Supreme Court has stated: "It is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181, 91 L. Ed. 2d 144, 106 S. Ct. 2464 (1986).

United States v. Wright, 845 F. Supp. 1041, 1065 (D.N.J. 1994) (citations omitted).

23

1.   <u>Reference to Guilty Pleas</u>

Defendant points to several statements the Government made during closing argument that referenced his friendship with corrupt politicians and the guilty plea of coconspirators:

> And in the defense opening and in the cross of Jayson Adams, there was a lot of talk about Pleasantville, and all the bribes happening in Pleasantville, and the bribes being exchanged for contracts.   There was talk about Jayson Adams, there was talk about James Pressley, there was talk about James McCormick, there was talk about Pete Callaway all giving bribes in exchange for contracts.
>
> However, in the opening the defense said that even though a lot of these people were members of the Real Democratic Club, that the Defendant, Louis Mister, did not know that this bribery conduct was going on.
>
> Let's talk a little bit about Pete Callaway, because he also came and he also told you that he took bribes to steer contracts in the way of Bruce Begg and John D'Angelo, and he also pled guilty for that conduct . . .
>
> Do not forget, ladies and gentlemen, that Pete Callaway took the same plea to corruption, even though he's a friend of Louis Mister, as that plea that was taken by Jayson Adams.

(Tr. May 13, 2008 939:17 to 940:12.)

It was proper for the Government to refer to the testimony of Defendant's coconspirators and to point out to the jury that they had admitted they were involved in the crimes for which Defendant was on trial.   This is so because their involvement was the basis for their knowledge.   The jury was instructed that they

24

should not consider the pleas of others as dispositive of

Defendant's guilt:

> You have heard evidence that Jayson Adams and
> Maurice Callaway are alleged accomplices and/or
> co-conspirators, who say they participated in the
> crimes charged, and made plea agreements with the
> Government.
> The testimony of those witnesses was received
> in evidence and may be considered by you.  The
> Government is permitted to present the testimony of
> someone who has reached a plea bargain with the
> government in exchange for his testimony, but you
> should consider the testimony of such witnesses
> with great care and caution.  In evaluating the
> testimony of Adams and Callaway, you should
> consider this factor along with the others I have
> called to your attention.  Whether or not their
> testimony may have been influenced by the plea
> agreements and alleged involvement in the crime
> charged is for you to determine.  You may give
> their testimony such weight as you think it
> deserves.
> However, you must not consider the fact of a
> witness's guilty plea as any evidence of Louis
> Mister's guilt.  Their decisions to plead guilty
> were personal decisions about their own guilt.
> Such evidence is offered only to allow you to
> assess the credibility of the witness; to eliminate
> any concern that the defendant has been singled out
> for prosecution; and to explain how the witness
> came to possess detailed first-hand knowledge of
> the events about which he testified.  You may
> consider a witness's guilty plea only for these
> purposes.

(Instr. 14, Accomplice Testimony.)  The Court's limiting

instruction could not have been more clear.  Accordingly, the

Court does not find that the prosecutor's statements infected the

trial with unfairness, prejudiced the Defendant, or are otherwise

grounds for a new trial.

2.   <u>Swans Don't Swim in Cesspools</u>

In its rebuttal, the Government made a statement that, according to one interpretation, implies that if Defendant were innocent he would not hang around with unsavory characters:

> Throughout this case, a case about corruption that was going on in Pleasantville in 2006, corruption that was so deep and dirty – and keep in mind, ladies and gentlemen, the swans don't swim in cesspools.

There was no objection to the statement at trial.

Alternatively, the statement could have been referring to the cooperating witnesses and the Government's acknowledgment that it has tainted witnesses available to testify about corruption because those are the people who are involved in corruption.  Apparently this is a stock phrase prosecutors use and some courts view it as the defendant does while others view it as the Government does.  <u>See, e.g.</u>, <u>People v. Ward</u>, 862 N.E.2d 1102, 1139 (Ill. App. Ct. 1st Dist. 2007) ("The second comment, on the other hand (like other well-known prosecutorial rhetorical devices such as that prosecutors 'do not get to go to central casting' for their witnesses, or that 'there are no swans in the sewer,' or such as regrets for not being able to place a member of the clergy on the witness stand), can be interpreted not as an attack on defendant so much as an acknowledgment of the low character of the State's own witness.").

For example, in closing argument in <u>United States v. Smith</u>,

the Government referred to a cooperating witness whose character
had been impeached with a similar phrase: "'I never asked you to
like him, just listen to him.  And, as we say in this business,
you don't find swans in sewers.  The type of people that are
dealing in narcotics . . . are his very type, and you have to
pull them out of prisons to testify.'"  <u>United States v. Smith</u>,
806 F.2d 971, 974 (10th Cir. 1986).[1]

The Eleventh Circuit found meritless a defendant's argument
that a similar comment amounted to prosecutorial misconduct.
<u>United States v. Adams</u>, 799 F.2d 665 (11th Cir. 1986).  In that
case, the Government said:

> And as [a witness] told you, dope dealers deal with
> dope dealers, and you have to know, you don't find
> a swan in the sewer, and that's what you get . . .
> .

<u>Id.</u> at 670.  The Court dismissed the defense argument about the
comments summarily:

> The appellants argue that the comment about "dope
> dealers" and "sewers" was inflammatory because it
> depicts the defendants as drug dealers emanating
> from the sewer.  Their argument is without merit.
> The appellants have taken the prosecutrix'
> statement out of context.  The record clearly
> indicates that the prosecutrix was not referring to
> the defendants.  Rather, she was referring to the

---

[1]  The prosecutor in <u>Smith</u> then referred to that witness's
guilty pleas; no instruction was given to the jury on the effect
of a co-conspirator's plea, and therefore the Tenth Circuit
reversed the conviction and remanded for a new trial.  <u>United
States v. Smith</u>, 806 F.2d 971, 974 (10th Cir. 1986).  However,
the Court did not find the statement about swans in the sewer to
refer to the defendant.

government witnesses, whose credibility had been
attacked by defense counsel on cross-examination
and in closing arguments.  The prosecutrix was
merely reminding the jury that the government had
conceded all along that its witnesses were drug
dealers.

Id.

In Commonwealth v. Anderson, the prosecutor also used the

phrase in closing, but explicitly referred to the defendant and

the crime with which he was charged in the case.  Nevertheless,

the Supreme Judicial Court of Massachusetts found the statement

to be permissible.

"Ladies and gentlemen, you don't find swans in a
sewer and I submit to you that MCI Cedar Junction
is a sewer. And what helps make MCI Cedar Junction
a sewer are inmates walking around with razor
shanks such as Lewis Anderson had and attacking
other inmates such as Charles Jenkins." The
defendant's trial counsel neither objected to the
remarks, nor requested a curative instruction. We
inquire whether anything in the remarks created a
substantial risk of a miscarriage of justice.
[ . . .]

The remarks . . . represented a dramatic flourish
that was probably not meant to be taken literally.
The jury undoubtedly were aware that the prosecutor
was arguing his view, and they had the capacity to
discount hyperbole. . . . The statement came
against a background that the defendant had used a
razor shank to wound Jenkins and that M.C.I. Cedar
Junction was a dangerous environment prone to
assaultive conduct and the presence of illegal
weapons. The last facts were vigorously pushed by
the defendant's trial counsel in her summation.
The prosecutor's remarks may have been strong but
they were not over the line marking
impermissibility.

We conclude, therefore, that the prosecutor's final
argument, considered as a whole and in light of the
evidence and the contentions at trial, was not

improper.

Commonwealth v. Anderson, 581 N.E.2d 1296, 1300-01 (Mass. 1991).

The Government argues that it made no improper "guilt by association" arguments at trial.  (Govt. Ltr. Br. at 10-12.) First, the Government notes that there was no objection to any of the alleged misstatements at trial.  The Government points out that the jury verdict belies an argument that the jury convicted merely on a theory of guilt by association, as it rejected Count One, the conspiracy charge.  Furthermore, the comments by the Government, even if improper, do not appear to have infected the trial with unfairness.

Because there was no objection, because it does not appear any statements tainted the trial or the verdict, and because there was sufficient evidence for the jury to find guilt beyond a reasonable doubt, the motion for a new trial shall be denied on this ground as well.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall deny the motions for a judgment of acquittal and a new trial.


**September 3, 2008**                            **  s/ Jerome B. Simandle     **
Date                                         JEROME B. SIMANDLE
                                             U.S. District Judge